**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**DOMINO SUGAR CORPORATION,**
**Defendant,**

**Tate & Lyle North American Sugars Inc., Defendant–Appellant.**

**Docket No. 02–6287.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 16, 2003.

Decided: Nov. 10, 2003.

Henry B. Miller, Burt, Maner, Miller & Staples (Jonathan E. Jackel, of counsel), Washington, DC, for Defendant–Appellant.

Sheila M. Gowan, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney, Sara L. Shudofsky, Assis-

tant United States Attorney, of counsel), New York, NY, for Plaintiff–Appellee.

Before: LEVAL and SACK, Circuit Judges, and KORMAN, District Judge.*

SACK, Circuit Judge.

This appeal stems from the efforts of the Internal Revenue Service ("IRS") to recover interest it mistakenly paid on a company's deposit in the nature of a cash bond at the time the IRS returned the cash bond to the company. The government eventually brought suit against the company to recover the interest. The only issue on appeal is whether the government's action was timely. We conclude that it was. We therefore affirm the judgment of the district court ordering the company to return the interest to the government.

**BACKGROUND**

Although the facts underlying this lawsuit are complicated and were contested vigorously in the district court, *see United States v. Tate & Lyle N. Am. Sugars, Inc.,* 228 F.Supp.2d 308 (S.D.N.Y.2002) *("Tate & Lyle ")*, the facts relevant to the issue on appeal are relatively simple and largely undisputed. We rehearse them only insofar as we think necessary to explain our resolution of this appeal.

In 1988, Refined Sugars Incorporated ("RSI") acquired and merged into Amstar Sugar Corporation ("Amstar"). On August 16, 1989, Amstar became an affiliated company of Tate & Lyle, Inc. ("TLI"). On June 15, 1990, Amstar filed a federal income tax return for a period ending August 16, 1989 (the "8908 return").

In August 1990, the IRS determined that Amstar had deducted an RSI net operating loss on the 8908 return in the amount of $18,009,489.00 and that TLI had made the same deduction on one of its tax returns. The deduction for the same loss obviously could not be taken twice. Amstar officials thought that the double deduction would likely result in a tax deficiency for Amstar of more than $6 million with respect to the period covered by the return.

On December 13, 1990, Amstar's treasurer signed a notice of proposed adjustment issued by the IRS for the 8908 return. An affiliate of TLI remitted to the IRS, as what the district court later determined to be a deposit in the nature of a cash bond, a check in the amount of $6,497,710.00 to account for the likely tax deficiency plus accrued interest.

In or about September 1993, the IRS determined that, in fact, Amstar had overpaid its taxes for the period covered by the 8908 return, and had overpaid by an amount that exceeded the deficiency anticipated on account of the duplicated deduction. Amstar was therefore entitled to have its overpayment refunded and also to have its cash bond returned. On September 28, 1993, in connection with the 8908 return, the IRS issued a refund check payable to Amstar for $8,240,206.34. The amount included (1) a refund for the overpayment (minus other Amstar tax liabilities), (2) interest on the overpayment, (3) the $6,497,710.00 cash bond of December 1990, and (4) $1,526,100.60 in interest on the cash bond.

Some two years later, in September 1995, an IRS employee discovered that the IRS had paid interest on the returned $6,497,710.00. He viewed the remittance in that amount (as the district court later

---

* Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

agreed) as a cash bond, and concluded that the payment of interest was therefore improper because cash bonds do not earn interest. The IRS therefore informed Amstar of what the IRS considered to be a mistake and demanded return of the interest. The company refused.

On December 10, 1997, the government brought suit against Amstar's successor corporation, Tate & Lyle North American Sugars Inc. ("Tate & Lyle"),[1] seeking to recover the $1,526,100.60 interest. The district court (Richard M. Berman, *Judge* ) denied Tate & Lyle's motion to dismiss the lawsuit, *United States v. Domino Sugar Corp.*, 210 F.Supp.2d 219, 219 (S.D.N.Y. 1999), and then its motion for summary judgment, *United States v. Tate & Lyle N. Am. Sugars Inc.*, 162 F.Supp.2d 236, 245 (S.D.N.Y.2001).

After a bench trial, the district court found in favor of the government, ordering Tate & Lyle to return the erroneously paid interest to the IRS. *Tate & Lyle,* 228 F.Supp.2d at 326. The court first found, as noted above, that the December 1990 remittance was a deposit in the nature of a cash bond and not a payment of tax. *Id.* at 320–25. The court agreed with the government that a cash bond could be retrieved by the party paying it, but unlike a tax payment, not through the IRS's refund procedures. If a taxpayer requests a cash bond's return, the IRS will return it forthwith, but without interest. *Id.* at 320. The court therefore determined that the 1993 payment of $1,526,100.60 as interest on the cash bond was mistaken. *Id.*

The district court also concluded, on the sole issue before us on appeal, that the government's suit was timely. *Id.* at 325. Because the claim was one for unjust enrichment grounded in quasi-contract, the court agreed with the government that the six-year statute of limitations contained in 28 U.S.C. § 2415(a) applied. *See id.* at 325–26, 325 n. 10. Section 2415(a) states: "[E]very action for money damages brought by the United States or an officer or agency therefor which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues ...." Under this statute, the government's action was timely. The court rejected Tate & Lyle's argument that the applicable statute of limitations was that set forth in 26 U.S.C. § 6532(b), which provides that "[r]ecovery of an erroneous refund by suit ... shall be allowed only if such suit is begun within 2 years after the making of such refund," and which would have barred the government's suit. *Id.*

Tate & Lyle appeals only the district court's determination that a six-year statute of limitations rather than a two-year statute of limitations applies to this action.

## DISCUSSION

### I. Standard of Review

Because the facts underlying this appeal are undisputed, the sole issue before us on appeal is a question of law: on those facts, what statute of limitations, if any, applies. We review questions of law *de novo. Krizek v. Cigna Group Ins.*, 345 F.3d 91, 99 (2d Cir.2003).

### II. Tax Payments and Cash Bonds

In 1945, the Supreme Court recognized the deposit in the nature of a cash bond as a distinct type of remittance by a taxpayer to the IRS. *See Rosenman v. United*

---

1. Amstar was succeeded by Domino Sugar Corporation, which has since changed its name to Tate & Lyle North American Sugars Inc. TLI is the parent company of Tate & Lyle.

*States,* 323 U.S. 658, 662–63, 65 S.Ct. 536, 89 L.Ed. 535 (1945). Such cash bonds

> are set aside ... in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due.

*Id.* at 662, 65 S.Ct. 536. The Court explained the reason for the use of cash bonds:

> [T]he Government safeguards collection of the assessment of whatever amount tax officials may eventually find owing from a taxpayer, while the taxpayer in turn is saved the danger of penalties on an assessment made ... years after a fairly estimated return has been filed.

*Id.* at 663, 65 S.Ct. 536. The *Rosenman* Court therefore concluded that cash bonds are not tax payments. *Id.*

The Internal Revenue Code has no provisions addressing cash bonds. The IRS has, however, issued revenue procedures relating to them. Revenue Procedure 84–58, for example, provides that a remittance "that is designated by the taxpayer in writing as a deposit in the nature of a cash bond will be treated as such by the [Internal Revenue] Service." Rev. Proc. 84–58, § 4.02, ¶ 1, 1984–2 C.B. 501; *see also id.* § 4.01, ¶ 2 (same). A cash bond, like a tax payment, stops the running of interest on a tax liability, even one that has yet to be

assessed, on the date the IRS receives it. *Id.* § 5.01.

A deposit in the nature of a cash bond "is not subject to a claim for credit or refund as an overpayment." *Id.* § 4.02, ¶ 1; *see also Callaway v. Comm'r of Internal Revenue,* 231 F.3d 106, 113 n. 11 (2d Cir.2000) (relying on Revenue Procedure 84–58). But a taxpayer may obtain a return of any part of the cash bond before the IRS assesses the tax simply by requesting it. Rev. Proc. 84–58, at § 4.02, ¶ 1; *Callaway,* 231 F.3d at 113 n. 11. When the IRS returns the amount of the cash bond, it is supposed to do so without interest.[2] Rev. Proc. 84–58, at § 5.04; *Callaway,* 231 F.3d at 113 n. 11.

The distinctions between tax payments and cash bonds can affect applicable limitations periods. For example, courts have decided that 26 U.S.C. § 6511, which establishes the limitation period in which taxpayers may file a refund claim, does not apply to a claim for return of a cash bond. *See N.Y. Life Ins. Co. v. United States,* 118 F.3d 1553, 1557–58 (Fed.Cir.1997) (determining that a refund suit under 26 U.S.C. § 6511(a) cannot be maintained to recover a cash bond), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *Finkelstein v. United States,* 943 F.Supp. 425, 429 n. 16 (D.N.J.1996) (concluding that the statute of limitations in 26 U.S.C. § 6511 is inapplicable to a taxpayer's action to recover as a refund a remittance made to the IRS because the remittance was a cash bond, to which formal refund procedures do not apply); *Crosby v. United States,* 889 F.Supp. 148, 150 (D.Vt.1995) (reasoning that 26 U.S.C. § 6511(b)(2)(A) cites taxes paid, and a cash bond is not a

---

**2.** "Payments can be retrieved only through the long refund process, while deposits are recoupable by simple letter request before assessment of the underlying tax." Mark Aquilio, *Payment vs. Deposit: Make Sure Tax De-*
*posits Are Not Payments,* 54 Tax'n for Acct. 89, 96 (1995). The IRS must pay interest only on refunded payments and not on returned cash bonds.

payment); *cf. Rosenman*, 323 U.S. at 662–63, 65 S.Ct. 536 (deciding that the predecessor to section 6511 did not govern cash bonds); *Malachinski v. Comm'r of Internal Revenue*, 268 F.3d 497, 509 (7th Cir. 2001) (concluding that 26 U.S.C. § 6512 was inapplicable to a taxpayer's deposit in the nature of a cash bond because there could be no payment, and thus no overpayment, in regard to a cash bond). Thus, however long there is a cash bond on deposit with the IRS, the bond depositor can, under most circumstances, successfully require its return.

### III. The Government's Right To Sue

▅ We base our analysis on several well-established general principles. "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid. No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute." *United States v. Wurts*, 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932 (1938) (footnote, internal quotation marks, and citation omitted); *see also Bechtel v. Pension Benefit Guar. Corp.*, 781 F.2d 906, 907 (D.C.Cir.1986) (per curiam) (same); *DiSilvestro v. United States*, 405 F.2d 150, 155 (2d Cir.1968) (same). With respect to the limitations period applicable to such government suits, "[t]he United States is not subject to any statute of limitations ... unless Congress specifically provides otherwise." *United States v. Podell*, 572 F.2d 31, 35 n. 7 (2d Cir.1978). When a statute of limitations is "sought to be applied to bar rights of the Government, [it] must receive a strict construction in favor of the Government." *E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462, 44 S.Ct. 364, 68

L.Ed. 788 (1924); *see also Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 391, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (same). And "the sovereign is not liable for interest unless there is a statutory requirement or a contract to pay it." *Busser v. United States*, 130 F.2d 537, 538 (3d Cir.1942) (citing *Tillson v. United States*, 100 U.S. 43, 25 L.Ed. 543 (1879) and *United States v. North Carolina*, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336 (1890)).

Even if there were no specific statutory authorization, then, the government could obtain a judgment requiring Tate & Lyle to return the interest paid unless federal law required the payment of interest or a statute of limitations barred recovery. As we have noted, no law requires interest to be paid on a cash bond. The questions before us are therefore whether there is a statute of limitations applicable to this action, and if so, whether it renders this action untimely.

### IV. Applicability of 26 U.S.C. § 6532(b)

▅ 26 U.S.C. § 6532 provides that:

Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.[3]

26 U.S.C. § 6532(b). Tate & Lyle contends that under the plain meaning of section 6532(b), the IRS's payment of interest was an "erroneous refund," and the two-year limitations period set forth in the section therefore applies. Because this ac-

---

3. In *United States v. Wurts*, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938), the Supreme Court concluded that the predecessor to section 6532 "is a limitation of the Government's long-established right to sue for money wrongfully or erroneously paid from the public treasury," *id.* at 416, 58 S.Ct. 637.

tion was brought more than two years after the interest on the cash bond was mistakenly paid, Tate & Lyle argues, the statute had run, barring recovery. We disagree.

Section 6532(b) provides a two-year statute of limitations only with respect to "[r]ecovery of an erroneous refund by suit *under section 7405." Id.* (emphasis added). The only provisions pertaining to such recovery in section 7405 are contained in sections 7405(a) and (b). Section 7405(a) provides that "[a]ny portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, may be recovered by civil action brought in the name of the United States."[4] Section 7405(b) provides that "[a]ny portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States." Section 6532(b), providing the two-year limitations period, thus applies only to suits for "[a]ny portion of a tax imposed by . . . title [26 of the United States Code, i.e., the Internal Revenue Code]" that has been erroneously refunded.

Remittance to the IRS of a deposit in the nature of a cash bond is not a payment of a tax imposed by the Internal Revenue Code. Such a bond is remitted to the IRS for the purpose of stopping interest from running on a possible future tax liability rather than paying a tax liability. *See* Rev. Proc. 84–58, at §§ 4.01, ¶ 2, 4.02, ¶ 1 (declaring that a cash bond given by a taxpayer to the IRS before or after the mailing of a notice of deficiency may be returned to the taxpayer before the IRS "is entitled to assess the tax"); *cf.* 26 U.S.C. § 26(b)(1) (defining "regular tax liability" as the tax imposed by the Internal Revenue Code for the taxable year). Any "erroneous refund" of such a cash bond is therefore not the erroneous refund of "[a]ny portion of a tax imposed by . . . title [26]." *A fortiori*, the erroneous payment of interest on such a cash bond is not the erroneous refund of "[a]ny portion of a tax imposed by . . . title [26]."[5]

---

4. Section 6514 provides:

(a) Credits or refunds after period of limitation.—A refund of any portion of an internal revenue tax shall be considered erroneous and a credit of any such portion shall be considered void—

(1) Expiration of period for filing claim.—If made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; or

(2) Disallowance of claim and expiration of period for filing suit.—In the case of a claim filed within the proper time and disallowed by the Secretary, if the credit or refund was made after the expiration of the period of limitation for filing suit, unless within such period suit was begun by the taxpayer.

(3) Recovery of erroneous refunds.—For procedure by the United States to recover erroneous refunds, see sections 6532(b) and 7405.

(b) Credit after period of limitation.—Any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 6401(a). 26 U.S.C. § 6514.

5. Although courts have sometimes treated a payment by the IRS to a taxpayer as a refund even when not based on a rebate of taxes paid by the taxpayer, those cases address refunds made in connection with an IRS determination of tax liability. For example, in *O'Bryant v. United States*, 49 F.3d 340 (7th Cir.1995), the IRS sent a refund check to taxpayers after they had been mistakenly credited twice for a single payment for taxes due, *id.* at 341. *See also Singleton v. United States*, 128 F.3d 833, 834–39 (4th Cir.1997); *United States v. Wilkes*, 946 F.2d 1143, 1144–48 (5th Cir. 1991). In the instant case, by contrast, there was no IRS determination of tax liability in connection with the repayment by the IRS to Tate & Lyle of the amount of the cash bond and payment of interest thereon.

A suit by the government to recover an erroneous payment of interest on a deposit in the nature of a cash bond thus cannot be brought under section 7405. The statute of limitations in section 6532(b) applies only to "suit[s] under section 7405." Based on the statutory language and the principle that statutes of limitations receive a strict construction in favor of the government, this statute therefore does not apply to the instant suit brought by the government to recover an erroneous payment of interest on Tate & Lyle's cash bond.

Whether the six-year statute of limitations in 28 U.S.C. § 2415(a) applies, or indeed, if there is no applicable statute of limitations at all, the government's suit seeking repayment of interest on Tate & Lyle's deposit in the nature of a cash bond was timely.

### CONCLUSION

For the foregoing reasons, we conclude that the two-year statute of limitations contained in 26 U.S.C. § 6532(b) does not apply to the government's action and that the action was therefore timely filed. The judgment of the district court is affirmed.