09-1979-cv
United States v. Livecchi

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

————————————

August Term, 2011

(Argued:  November 1, 2011                    Decided: April 2, 2013)

Docket No. 09-1979-cv

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Counter-Defendant-Appellee*,

*-v.-*

CHARLES R. LIVECCHI and C.R.L. MANAGEMENT, INC.,

*Defendants-Counter-Claimants-Appellants*.[*]

————————————

Before:

SACK and HALL, *Circuit Judges*.[**]

————————————

Defendants-Counter-Claimants-Appellants owned and operated a multifamily housing project, which was financed through a mortgage insured by the United States Department of Housing and Urban Development ("HUD").  They appeal from an amended judgment entered April 29, 2009, in the United States District Court for the Western District of New York (Payson, M.J.) in an action the government brought under 12 U.S.C. § 1715z-4a to recover rental income Defendants retained in violation of their regulatory agreement with HUD.  Following

—————————————————————

[*]      The Clerk of Court is requested to amend the caption as set forth above.

[**]      The Honorable Roger J. Miner, who was originally assigned to the panel, died prior to the resolution of this case.  The remaining two members of the panel, who are in agreement, have determined the matter.  *See* 28 U.S.C. § 46(d); 2d Cir. Internal Operating Procedure E(b); *United States v. Desimone*, 140 F.3d 457, 458-59 (2d Cir. 1998).

1

cross-motions for summary judgment, the district court held: (1) that the government retained standing despite having foreclosed on the mortgage; and (2) that the action was not barred by the six-year statute of limitations, *see* 12 U.S.C. § 1715z-4a(d), because the limitations period started to run when HUD discovered Defendants' equity skimming, in 2000, and not when Defendants defaulted on the mortgage, in 1997.

AFFIRMED.

HERMAN KAUFMAN, Law Office of Herman Kaufman, Old Greenwich, CT, *for Defendants-Counter-Claimants-Appellants*.

STEPHAN J. BACZYNSKI, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Plaintiff-Counter-Defendant-Appellee*.

*Per curiam*:

Defendants-Appellants, Charles R. Livecchi and his real estate company C.R.L. Management, Inc. (collectively, "Livecchi"),[1] appeal from an amended judgment entered April 29, 2009, in the United States District Court for the Western District of New York (Payson, M.J.), following partial summary judgment in favor of the government's equity-skimming claim, *United States v. Livecchi*, No. 03-cv-6451P, 2005 WL 2420350, at *22 (W.D.N.Y. Sept. 30, 2005) ("*Livecchi I*"), and a subsequent bench trial rejecting Livecchi's counterclaim for recoupment and granting the government's application for double damages and prejudgment interest, *United States v. Livecchi*, 605 F. Supp. 2d 437, 463 (W.D.N.Y. 2009) ("*Livecchi II*").

On appeal, Livecchi argues that: (1) the government lacked standing to sue under 12 U.S.C. § 1715z-4a(a) because HUD had foreclosed on Livecchi's mortgage; and (2) the action

---

[1] We will also refer to the Defendants collectively in the singular.

2

was barred by the statute of limitations provision, § 1715z-4a(d), because the limitations period started to run when Livecchi defaulted on the mortgage, in 1997, and not, as the district court held, when the government discovered Livecchi's equity skimming in 2000.

Livecchi's interpretation of the equity-skimming statute is inconsistent with the statute's clear purpose. The government's authority to foreclose on a HUD-insured mortgage cannot preclude the government from subsequently recovering assets or rental income retained in violation of a related regulatory agreement. As for the limitations period, Livecchi failed to establish that HUD had any knowledge of his equity skimming prior to August 21, 2000, the date HUD first acquired Livecchi's financial records. We therefore affirm the amended judgment in all respects.

## I.    BACKGROUND

### A.    The Regulatory Agreement Governing Livecchi's HUD-Insured Mortgage

From 1982 through 1998, Livecchi owned and managed a multifamily housing development in Rochester, New York, known as the Cambridge Court Apartments (the "Apartments" or the "Property"). Livecchi refinanced the Property in August of 1992 by obtaining a $2,390,700 consolidated mortgage from Continental Securities Corporation ("Continental"). *Livecchi I*, 2005 WL 2420350, at *1. At the time of the refinancing, Livecchi had approximately $700,000 of equity in the Property. *Livecchi II*, 605 F. Supp. 2d at 441. HUD insured the mortgage and agreed to cover the mortgage interest and principal in the event of default. *Id.*, *see* 12 U.S.C. § 1715n(f). HUD also agreed in the event of default to accept assignment of the mortgage from Continental. HUD's insurance relieved Livecchi of personal liability in the event of mortgage default. *Livecchi I*, 2005 WL 2420350, at *1.

3

Livecchi, in exchange, entered into a Regulatory Agreement for Multifamily Housing Projects (the "Regulatory Agreement" or "Agreement") with HUD on August 20, 1992. Under the Agreement, Livecchi did not assume personal liability for payments due under the note and mortgage. *Livecchi II*, 605 F. Supp. 2d at 441 & n.3.[2] He did, however, have to make "all payments due under the note and mortgage," to establish and maintain a "Reserve Fund for Replacements" ("RFR") and to provide HUD with annual financial statements "prepared in accordance with the requirements of HUD." *Id.* at 441 (alterations omitted). Livecchi was prohibited "from retaining any rental income in excess of his reasonable operating and maintenance expenses during any period in which the mortgage was in arrears." *Id.* Finally, if Livecchi violated any of these obligations, the Agreement authorized HUD to declare a default, accelerate the loan, and foreclose on the Property. *Id.*

The RFR requirement is central to this case. HUD's goal in mandating it was to ensure that sufficient funds were available to finance capital replacements for the Property, thereby protecting its condition for the benefit of its residents. *Id.* Thus, the RFR functioned as a sort of maintenance escrow account. *Id.* Under the Agreement, Livecchi funded the RFR with an initial deposit of $200,000 and thereafter was supposed to make monthly payments of $2,013 into the fund.[3] Perhaps more importantly, Livecchi also was required to apply rental revenues to the

---

[2]  Livecchi remained liable only: "(a) for funds or property of the project coming into his hands which, by the provisions [of the Agreement], he is not entitled to retain; and (b) for his own acts and deeds or acts and deed[s] of others which he has authorized in violation of the provisions hereof." *Id.* at 441 n.3 (alterations omitted).

[3]  Although the requirements for the fund's balance apparently fluctuated during the period of the mortgage, the monthly deposit requirement never changed. *Id.* at 441 n.4.

4

mortgage payments and to the RFR payments before retaining or otherwise disposing of "surplus cash," with an exception for "reasonable operating expenses and necessary repairs."

Like most escrow accounts, the RFR was not totally under Livecchi's control. According to the terms of the Agreement, improvements to the Property using RFR money had to be approved by HUD. *Id.* at 441-42. & n.5. The Agreement further provided that in the event of a mortgage default for which the loan was accelerated, HUD could apply the balance in the RFR to reduce the amount of mortgage indebtedness. *Id.* at 442.

B.      Livecchi's Disputes with HUD

Within months after the Regulatory Agreement was executed, Livecchi and HUD began to disagree over their respective obligations, especially over Livecchi's duty to provide HUD with annual financial statements and HUD's duty to release RFR funds for capital expenditures. *Id.* Following a 1994 administrative proceeding initiated by HUD, the parties entered into a written settlement agreement which they hoped would resolve their disputes. Livecchi agreed, inter alia, "to comply fully with all rules, regulations and other requirements of HUD, and specifically with respect to HUD's requirement of accrual based financial statements." *Id.* (quotation marks omitted).

Despite the settlement agreement, however, disputes continued. *See generally id.* at 442-45. HUD withheld several RFR disbursement requests Livecchi submitted between March 1994 and February 1996, citing Livecchi's continuing failure to satisfy some of his reporting obligations. *See id.* at 443-44. In February 1996, however, HUD released funds from the RFR in the amount of $33,154.38, which substantially covered Livecchi's pending RFR requests. *Id.*

at 444. Following that authorization, Livecchi submitted two more RFR requests—one on November 18, 1996, and one on January 15, 1997.[4] HUD paid neither. *Id.*

C. Livecchi's Default on the Mortgage

Citing his ongoing disputes with HUD regarding the financial reporting obligations and the release of money from the RFR, Livecchi informed HUD by letter dated January 15, 1997 that he intended to stop paying into the RFR and hold those payments in escrow. *Id.* at 445. On March 27, 1997, HUD responded with its own letter, stating that Livecchi's November 1996 RFR disbursement request had been denied because of his numerous violations of the Regulatory Agreement, including his failure to submit audited financial statements for 1995, his failure to maintain the Property in a satisfactory condition, and his failure to submit an adequate capital needs budget. *Id.* HUD further cautioned Livecchi that his failure to correct these violations could result in HUD declaring a default under the Regulatory Agreement and resorting to "any and all rights" set forth in the Agreement.[5] *Id.* Despite HUD's warning, however, Livecchi continued his self-help, deducting the monthly RFR payment of $2,013 from his February 1997 and March 1997 mortgage payments to Continental. *Id.*

---

[4] *Livecchi I*, 03-CV-6451P, 2005 WL 2420350 at *3 (W.D.N.Y. Sept. 30, 2005), and *Livecchi II*, 605 F. Supp. 2d 437, 445 (W.D.N.Y. 2009), describe differently the document submitted by Livecchi on January 15, 1997. While it is characterized as an RFR request in *Livecchi I*, it is described as a letter in *Livecchi II*. The document's characterization either way does not affect the disposition of this case.

[5] On March 18, 1997, HUD sent Livecchi a written "Notice of Intent to Request a Civil Money Penalty." The Notice advised Livecchi that HUD was considering the imposition of a civil penalty for his failure to submit annual financial statements for 1995. *Id.* at 446. Livecchi responded by sending HUD a copy of "certified audits" for the Property and stating in a separate letter that he had already sent the 1995 statements. *Id.*

In April 1997, Livecchi received notification from the IRS that he owed income tax on $5,412.93 of interest earned on the RFR account. *Id.* In conjunction with the March 1997 and April 1997 mortgage payments, Livecchi directed Continental to apply the $5,412.93 of interest earned on the RFR account to cover any deficiency in his mortgage payments for those months. Continental declined to do so. Accordingly, Livecchi withheld both the RFR payment of $2,013 and the tax deficiency of $5,412.93 from his April 1997 mortgage payment to Continental. *Id.*

Continental advised Livecchi that his mortgage payments were inadequate and could not be applied in the manner sought. *Id.* at 446. Continental applied Livecchi's April 1997 mortgage payment to cover the March 1997 arrears, including the delinquent RFR deposit. As a result, Continental declared Livecchi delinquent on his mortgage as of April 1997. *Id.* On April 15, 1997, Continental sent Livecchi a letter warning him that Continental would be required to file a "Notice of Default" with HUD if he did not pay up his mortgage by the end of the month. *Id.* Livecchi countered by stopping payment on the April 1997 mortgage check. *Id.* Notwithstanding Continental's April 15 warning, Livecchi did not forward any more mortgage payments either to HUD or Continental. Livecchi did state that he had deposited a portion of the required payment in a separate bank account. *Livecchi I*, 2005 WL 2420350, at *4.

D.      Assignment of the Mortgage and Foreclosure Proceedings

On May 1, 1997, Continental notified HUD that it was electing to assign the delinquent mortgage to HUD. *Livecchi II*, 605 F.Supp. 2d at 447. Two and a half months later, HUD advised Livecchi of Continental's decision, described Livecchi's numerous alleged violations of the Agreement—including his failure to make the required mortgage and RFR payments—and instructed Livecchi that, to avoid foreclosure, he had to pay all mortgage delinquencies or submit

a plan to bring the mortgage current within thirty-six months of assignment. *Id.* Any such plan, HUD explained, "must address all physical repairs needed to the property and all regulatory deficiencies" under the Agreement. *Livecchi I*, 2005 WL 2420350, at \*4.

Continental's assignment of the mortgage to HUD was finalized on August 25, 1997. *Livecchi II*, 605 F. Supp. 2d at 447. Following the assignment, HUD advised Livecchi by letter of his continuing obligations to HUD, including the Regulatory Agreement's prohibition against using income from the Property for any purpose other than necessary expenses. *Id.* HUD used RFR funds to satisfy the mortgage payments, thus depleting the RFR account. *Id.* Due to the mortgage default and the RFR draw-down, HUD initiated foreclosure proceedings, which culminated in a November 12, 1998, foreclosure sale. The deed to the property was transferred on December 16, 1998. *Livecchi I*, 2005 WL 2420350, at \*5.

E.      Proceedings in the District Court

Livecchi's obligations under the Regulatory Agreement included furnishing, within sixty days of the end of the fiscal year, a "complete annual financial report based upon an examination of [his] books and records . . . prepared in accordance with . . . [HUD's] requirements." Livecchi failed to meet this obligation. As a result, on July 18, 2000, HUD's Office of Inspector General issued a subpoena compelling him to produce the statements, which he finally did on August 21, 2000. The subpoenaed statements revealed that Livecchi had diverted substantial sums of money derived from the operation of the Apartments to purposes forbidden by the Regulatory Agreement. In March 2002, Livecchi was charged with the crime of equity skimming in violation of 12 U.S.C. § 1715z-19. *United States v. Livecchi*, No. 02-CR-6022 (W.D.N.Y.

8

2002). That indictment was dismissed on the government's motion one year later.[6] *Id.* On September 12, 2003, the government filed this civil complaint under § 1715z-4a, seeking recovery of the misappropriated funds.

The parties agreed that the matter would proceed to final disposition before United States Magistrate Judge Marian W. Payson. They cross-moved for summary judgment, with Livecchi arguing that: (1) the government lacked standing to commence the action against him under the plain language of the equity-skimming statute in effect at the time because HUD no longer insured or retained an interest in the mortgage following the foreclosure sale; and (2) the government's action was time-barred under § 1715z-4a(d) because the September 12, 2003, complaint was filed more than six years after HUD knew, or should have known, that Livecchi was misappropriating income from the Apartments in violation of the Agreement.

The district court rejected both arguments. The court acknowledged that the plain language of the relevant version of the equity-skimming statute supported Livecchi's argument. At the time of Livecchi's alleged violation, HUD could initiate an action to recover assets or income used in violation of a regulatory agreement applying to a multifamily project "whose mortgage *is insured or held* by the Secretary under" certain provisions of the National Housing

---

[6]   In 2002, Livecchi filed suit in the United States District Court for the Western District of New York against Continental, HUD, and the Rochester Housing Authority ("RHA"). *See Livecchi v. HUD*, No. 02-cv-6570 (W.D.N.Y. 2002). That action challenged Continental's and HUD's alleged failure to enter into a work-out agreement with Livecchi, as well as HUD's purported failure to provide Livecchi with a calculation of the amount necessary to cure his default. On June 18, 2003, the district court granted summary judgment in favor of Continental, holding that Livecchi could not demonstrate that it was Continental's action that caused the foreclosure proceeding and that Continental had no duty to apply funds from the RFR toward the mortgage. On November 4, 2004, the court dismissed, with prejudice, the suit against HUD and RHA for failure to prosecute.

9

Act. 12 U.S.C. § 1715z-4a (2000) (emphasis added). But the district court ultimately disagreed with Livecchi's interpretation of the statute, holding that Livecchi's understanding would frustrate the statute's clear purpose, and reasoning that Congress's word choice was a "grammatical oversight" which did not bar the government from bringing post-foreclosure actions seeking monetary recovery. *Livecchi I*, 2005 WL 2420350, at *9. Regarding the statute of limitations, the district court held that the earliest applicable accrual date was August 21, 2000, when Livecchi first tendered his financial statements, because those documents were crucial to ascertaining whether Livecchi had retained income from the Apartments in excess of reasonable expenses for repairs and maintenance. *Id.* at *10. In rejecting Livecchi's argument that the accrual date should be the date on which he first defaulted on his mortgage payments, the court stated:

> Owners of multifamily projects may default on their mortgage payments for any number of different reasons, including that reasonable expenses exceed income. . . . Typically, without the financial records to determine the amount of income generated and the reasonable expenses incurred and paid, HUD cannot be expected to discover an owner's misuse of assets or income.

*Id.*

The court reserved decision on the government's application for double damages and Livecchi's counterclaim for recoupment. After a bench trial, the court granted the government's applications for double damages and for prejudgment interest, and denied Livecchi's claim for recoupment. *Livecchi II*, 605 F. Supp. 2d at 463. An amended judgment was entered on April 29, 2009, awarding HUD $962,876 in damages, plus pre-judgment interest in the amount of $206,156. Livecchi has timely appealed.

10

**II. ANALYSIS**

    A.    <u>Standard of Review</u>

As we do all legal issues, we review issues of statutory construction *de novo*. *United States v. Shyne*, 617 F.3d 103, 106 (2d Cir. 2010) (per curiam). The same is true of the district court's legal conclusions regarding the statute of limitations. *Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir. 2008).

    B.    <u>The Government's Standing</u>

The government commenced its action on September 12, 2003, before the equity-skimming statute was amended in 2004 and 2005. Prior to these amendments, the operative provision of the equity-skimming statute provided that "[t]he Secretary of Housing and Urban Development . . . may request the Attorney General to bring an action in a United States district court to recover any assets or income used by any person in violation of . . . a regulatory agreement that applies to a multifamily project *whose mortgage is insured or held by the Secretary*" under certain provisions of the National Housing Act. 12 U.S.C. § 1715z-4a(a)(1) (2000) (emphasis added). The current version of the statute now provides that an action may be brought for violations of "a regulatory agreement that applies to a multifamily project whose mortgage is *or, at the time of the violations, was* insured or held by the Secretary under Title II of the National Housing Act." § 1715z-4a(a)(1)(B) (emphasis added).

Based on the statute's pre-amendment plain language, Livecchi claims that the government did not have standing to bring this action because HUD no longer insured the mortgage at the time of suit. Clearly, the pre-2004 provision is written in the present tense. But our inquiry does not end there. Although the general rule of statutory interpretation is that a

11

statute should be enforced according to its plain and unambiguous meaning, *see, United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989), the plain meaning will not control where "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (quotation marks omitted), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  In other words, we will not interpret a statute in a way "that apparently frustrates the statute's goals, in the absence of a specific congressional intention otherwise."  *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2d Cir. 1985).

We agree with the district court's well-reasoned analysis and adopt it:  "[T]he purpose underlying the equity[-]skimming statute was to provide the government with a greater deterrent by affording it an additional remedy beyond the traditional remedies of foreclosure and suit for breach of contract."  *Livecchi I*, 2005 WL 2420350, at *7; *see also* 12 U.S.C. § 1715z-4a(e) (providing that the statutory remedy "is in addition to any other remedies available"); *United States v. Cofield*, 215 F.3d 164, 171 (1st Cir. 2000) ("[T]he legislative history confirms [that] the double damages provision was adopted simply to provide a greater deterrent to violations." (quotation marks omitted)).[7]  As the district court explained, Livecchi's reading of the statute—which would have precluded the government from bringing a post-foreclosure action—"would act as a significant incentive to delay foreclosure, notwithstanding the cost of that

---

[7]     Moreover, although the grammatical issue Livecchi raises is one of first impression, at least two other courts applying the pre-2004 statute necessarily determined, *sub silentio,* that the standing requirement was satisfied.  *See United States v. Ret. Servs. Grp.*, 302 F.3d 425, 427, 429 (5th Cir. 2002) (action under § 1715z-4a commenced nearly six years after foreclosure); *United States v. Schlesinger*, 88 F. Supp. 2d 431, 437, 439 (D. Md. 2000) (action under § 1715z-4a commenced eighteen months after foreclosure).

12

delay to taxpayers, in order to develop an adequate factual basis for an equity[-]skimming action." *Livecchi I*, 2005 WL 2420350, at *8; *see United States v. Winthrop Towers*, 628 F.2d 1028, 1036 (7th Cir. 1980) ("In exercising its discretion HUD may decide to foreclose in order to minimize losses from its insurance fund. HUD's interest in moving expeditiously to minimize such losses by foreclosure accords with national housing policy because such foreclosures preserve the assets of the insurance fund so that more projects may be insured in the future. Public money should not be put unnecessarily at risk by untoward administrative vacillation or judicial delays."). In practice, Livecchi's preferred rule would require the government to choose between pursuing foreclosure and civil damages. But Congress clearly wanted the government to be able to do both. Because Livecchi's textual argument would completely thwart these dual priorities, we reject it. *See Tomka*, 66 F.3d at 1313.

### C. The Limitations Period

As he did below, Livecchi also contends on appeal that the government's action comes too late. His statute of limitations argument is an affirmative defense for which he bears the burden of proof. *See Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996). That burden is especially high here, for "[w]hen a statute of limitations is sought to be applied to bar rights of the [g]overnment, it must receive a strict construction in favor of the [g]overnment." *United States v. Domino Sugar Corp.*, 349 F.3d 84, 88 (2d Cir. 2003) (quotation marks and alterations omitted). *See Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 391 (1984).

The statute of limitations governing equity skimming provides that HUD "may request the Attorney General to bring an action under this section at any time up to and including *6 years after the latest date* that the Secretary discovers any use of a property's assets and income in

13

violation of the regulatory agreement." 12 U.S.C. § 1715z-4a(d) (emphasis added). It is beyond

dispute that HUD did not *actually* discover Livecchi's equity skimming until August 21, 2000,

when it finally received the financial statements it had subpoenaed from Livecchi. While HUD

certainly was aware that Livecchi had defaulted on his mortgage and RFR payments well before

then, in 1997, knowing that Livecchi's mortgage was in default is not the same thing as knowing

that he had engaged in equity skimming. As the district court properly concluded, "Livecchi has

alleged no facts to show, or even suggest, that HUD was in possession of documents at the time

of the foreclosure disclosing the alleged misuse of Project income; nor has he recounted any

communications between HUD and others, whether verbal or written, from which such alleged

misuse was apparent." *Livecchi I*, 2005 WL 2420350, at *10.

For purposes of § 1715z-4a(d), the date on which HUD is charged with discovering

Livecchi's equity skimming is August 21, 2000. The government filed this action on September

12, 2003, well within the six-year limitations period.[8]

---

[8]　　In arguing otherwise, Livecchi apparently attempts an analogy to the way many common-law actions accrue for limitations purposes. Under New York law, for example, a cause of action for negligence accrues at the time of injury. *See* N.Y. C.P.L.R. § 214(5); *Barrell v. Glen Oaks Vill. Owners, Inc.*, 814 N.Y.S.2d 276, 277 (N.Y. App. Div. 2006). In section 1715z-4a(d), however, Congress specifically provides otherwise. *Id.* The accrual date is the actual "discover[y]" date. *Id.* Even more important, the equity-skimming statute's six-year period applies "[n]otwithstanding any other statute of limitations." *Id.*

　　Even if we were to credit Livecchi's claim that HUD knew or should have known that he had violated the regulatory agreement in 1997, the plain language of the limitations provision indicates that it is not the *first discovery* of a violation that triggers accrual of a cause of action *but the latest discovery* of the misuse of income or assets in violation of the Regulatory Agreement. *See United States v. Envicon Dev. Corp.*, 153 F. Supp. 2d 114, 121 (D. Conn. 2001) (stating that "the 'latest date' . . . mean[s] the date the Secretary receives documentation or other information or notice revealing . . . *any* use of project assets and income in violation of the regulatory agreement" (emphasis added and quotation marks omitted)). Accordingly, August 21, 2000, remains the correct accrual date, because that is the date HUD received the Project's financial statements and documentation from Livecchi.

14

**III. CONCLUSION**

We have considered Livecchi's remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is AFFIRMED.